400 So.2d 1370 (1981)
STATE of Louisiana
v.
Terry EDWARDS.
No. 80-KA-2624.
Supreme Court of Louisiana.
July 2, 1981.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, *1371 Dist. Atty., Leon Cannizzaro, Louise Korns, Asst. Dist. Attys., for plaintiff-appellee.
Donald Foret, Metairie, for defendant-appellant.
CALOGERO, Justice.
Defendant Terry Edwards and one William McNabb were charged by bill of information with theft of $248,192.00 from a Purolator Security, Inc., armored truck in violation of R.S. 14:67. Represented by the same retained counsel, defendants were tried together and convicted. The trial court sentenced each defendant to seven years imprisonment at hard labor. On appeal to this Court defendant Edwards argues six assignments of error for the reversal of his conviction.[1]
Evidence adduced at trial revealed that, using the name William A. Evans, defendant McNabb obtained employment with Purolator Security, Inc. Consistent with company policy, McNabb was fingerprinted, given a polygraph examination and assigned to begin work as a guard riding in the rear of an armored truck. McNabb served as a guard in a truck driven by a co-employee, one Norman Fouret. As a guard, McNabb received the money picked up by the driver and recorded the serial numbers of the deposits onto a manifest. He also handed the driver items being delivered to the respective Purolator customers. On July 26, 1979, just before 5 p. m., Mr. Fouret was making a pick-up from Harry's Ace Hardware, in a small shopping center on General Meyer Ave. in Algiers.
An off duty police officer was having coffee in a small restaurant in the same shopping area and observed, on the parking lot, a large, white recreational vehicle with an orange stripe pull alongside the Purolator truck. Officer Burnham related that the vehicle had New York license plates and that the word "Attala" was printed on the side of the vehicle. Burnham saw someone take a large white bag from the armored truck, throw the bag into the recreational vehicle and then enter the recreational vehicle on the passenger side. The vehicle drove away.
Mr. Fouret, the Purolator truck driver, returned to his vehicle with the pick-up from Harry's Ace Hardware and continued on his route. At his next stop he called for the guard to hand him a bag and received no reply. Fouret got out of the truck, went to the rear, opened the doors and discovered that the guard was not inside. Fouret reported the guard's absence to his supervisor and then checked to determine whether anything was missing from the truck. All the money with the exception of two bags of change was found to be missing.
The day after the crime, the defendant, Terry Edwards, brought a white Ford recreational vehicle with an orange stripe to an automobile auction in Gulfport, Mississippi, and registered it for sale. The word "Attala" had been covered with paint but was still somewhat visible beneath the paint. Officer Burnham later identified this vehicle as the one he had seen involved in the General Meyer Ave. incident. At the time the police discovered the vehicle, it had a Louisiana license plate, but a New York brake tag and registration certificate on the windshield, as well as a Louisiana brake tag.
The evidence against McNabb was strong. Fouret, driver of the Purolator truck which was the subject of the theft, identified him as the man who served as the guard on that truck. Additionally, McNabb's fingerprints matched those taken off the job applicant who gave the name William Evans and who was assigned as guard on the truck from which the money was stolen. McNabb initially appealed his conviction but later withdrew the appeal.
Following the procedure established by this Court, defendant Edwards' case was screened and assigned to the summary *1372 docket. For a discussion of this full screening and summary docket procedure see State v. Duhon, 340 So.2d 151 (La.1976, on rehearing). After oral argument we determined the case warranted assignment to a justice for full written opinion treatment.
Defendant relies on six assignments of error, five of which involve legal issues governed by clearly applicable principles of law and of no particular interest except to the parties. We therefore have discussed and disposed of them in an appendix attached to this opinion which remains a public record of this Court but which is not to be published in the Southern Reporter.
Defendant's sixth assignment of error asserts that his conviction should be set aside because there is insufficient evidence to establish his guilt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Although this issue was not raised by motion for a new trial (see C.Cr.P. art. 851(1)), we now consider sufficiency of evidence when the matter is simply raised by a formal assignment of error. State v. Temple, 394 So.2d 259 (La.1981); State v. Peoples, 383 So.2d 1006 (La.1980).
Where formerly we reviewed convictions to determine among other things whether there was simply some evidence, or any evidence, to support the trial fact finder's determination of guilt, (La.Const. art. V, § 5 (C)), the present standard for minimal due process as mandated by Jackson v. Virginia is a review to ascertain whether any rational trier of fact could have found defendant guilty beyond a reasonable doubt, accepting the facts most favorable to the prosecution.
While the appellate review standard necessarily entails for its application some assessment or ascertainment of the evidence presented at trial, we are nevertheless constrained not to serve as finders of fact. La.Const. art. V, § 5(C).
Furthermore, where, as in this case, defendant's guilt is supported entirely by circumstantial evidence, that evidence must exclude every reasonable hypothesis of innocence. R.S. 15:438. Correlating this rule relative to circumstantial evidence with Jackson v. Virginia, we concluded in State v. Austin, 399 So.2d 158 (La.1981), that: "when we review a conviction based upon circumstantial evidence we must determine that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded."
One state witness, James Michael Green, testified that Edwards owned and regularly drove a white Ford recreational vehicle like the one used in the crime. This witness had seen Edwards driving the vehicle about noon on the day of the crime (the theft occurred between 4:50 and 5:00 P.M.). Edwards took the vehicle to Mississippi the following day and registered it to be sold at the auction.
Edwards had owned a used car business on the West Bank in Westwego which he had sold just over a month before the theft. McNabb was a friend of and had worked for Edwards as finance manager of the used car retail business. When Edwards sold the business, he retained a corner of the lot from which he conducted wholesale automobile business.
Defendant presented two witnesses who testified that they had seen him paint the van, using a stencil. According to these witnesses, Edwards himself did at times touch up his vehicles including those which from time to time he took to the auction. Presumably, defendant presented these witnesses in an effort to show that it was not unusual for defendant's vehicles to be painted over and for him to do the painting himself. He argues that the painting was before the theft of July 26, that he had indeed painted over the word "Attala." However, the testimony of the witnesses does not make the time clear. They were only able to say that they observed defendant painting the vehicle prior to the time *1373 that they learned of the crime. One witness testified that he heard about the crime from another car dealer who had read about it in the newspaper. The state introduced evidence that the newspaper account of the incident did not run until several days after it had occurred.
Neither defendant nor his co-defendant McNabb took the stand. Edwards' principal thrust was to attack the reliability and value of the testimony of Officer Burnham. Burnham, who was off duty at the time of the crime, did not report the incident he had witnessed involving the Purolator truck and the recreational vehicle until the following morning when at roll call at the police station he learned of the Purolator theft of the previous day. His explanation of this delay was that he was uncertain of the support he would have received from the police department had he acted upon a mistaken conclusion while he was off duty. Furthermore, one part of his testimony may have been suspect, or at least, unclear. On recall to the stand, Burnham said, that "I never saw any writing...." This testimony followed his outset testimony that, when he saw the white recreational vehicle with the orange stripe alongside the Purolator truck (the same vehicle he later identified as the vehicle at the Gulfport auction lot), he had observed the word "Attala" on its side.[2]
The state's circumstantial evidence against defendant Terry Edwards was, then, as follows: McNabb stole the money, threw it into a vehicle driven by another unidentified individual, and the vehicle sped off. That vehicle was a white Ford recreational vehicle with an orange stripe, a vehicle shown to have been owned and regularly driven by Edwards. McNabb was a friend of Edwards and had been the finance manager for Edwards's retail used car business. Approximately 4½ hours before the vehicle pulled alongside the Purolator truck, Edwards had been observed driving his recreational vehicle on the West Bank. At some point in time near the date of the theft, Edwards was seen painting over the word "Attala" appearing on the side of the RV. On the afternoon following the theft, Edwards drove the RV bearing the painted over "Attala" to Gulfport, Mississippi, where he registered the vehicle with a wholesale auction lot. Finally, when Edwards learned that he was wanted for questioning in connection with the theft, he phoned the police from Jackson, Mississippi.
Was Edwards the driver of the recreational vehicle on July 26 at approximately 5:00 P.M. when it pulled alongside the Purolator armored truck? The circumstantial evidence proves that he was if every reasonable hypothesis to the contrary has been excluded. The RV might have been driven at the critical time by someone else (a friend of Edwards' or McNabb's? a temporary misappropriator?) Is this a reasonable hypothesis? The trial jury concluded that it was not.[3] We are not prepared to say as a matter of law under the circumstantial facts presented to the jury that the latter was a reasonable hypothesis.
We therefore determine that, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could well have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded.

Decree
For the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] By a motion filed in the trial court, defendant McNabb withdrew his appeal.
[2] In the photograph taken at the auto auction in Gulfport and introduced into evidence by the state, the word "Attala" although painted over is nevertheless visible through the paint.
[3] As defendant did not assign error to the trial court's instructions to the jury, we presume that the judge gave the correct instructions concerning circumstantial evidence.