439 So.2d 1163 (1983)
STATE of Louisiana
v.
Leroy BELL.
No. KA 0696.
Court of Appeal of Louisiana, Fourth Circuit.
October 6, 1983.
M. Craig Colwart, Orleans Indigent Defender Program, New Orleans, for appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William R. Campbell, Jr., Asst. Dist. Atty., New Orleans, for appellee.
Before REDMANN, SCHOTT and CIACCIO, JJ.
CIACCIO, Judge.
Defendant, Leroy Bell was charged with being a convicted felon in possession of a firearm. R.S. 14:95.1. He was tried before a judge, found guilty as charged and sentenced to imprisonment for three (3) years at hard labor. Defendant was granted an out of time appeal. We affirm the conviction and sentence.
On October 20, 1981 at approximately 11:30 a.m., New Orleans Police Officers Keith Turner and Norbert Zimmerman responded *1164 to a dispatch call to investigate a disturbance at the Desire Housing Project in New Orleans. Upon arriving at the Desire Housing Office at 3367 Desire Street in New Orleans, the policemen were met by Carolyn Howard, the complainant. Miss Howard was upset and crying. She informed the officers that her former boyfriend and father of her child, Leroy Bell, had thrown hot water on her and pointed a loaded pistol at her while threatening to shoot her. She advised the police officers that Bell was currently in her apartment at 2902 Desire Street, Apartment "C". The police accompanied by the victim proceeded to her apartment. The officers entered the apartment first, followed by the victim. Leroy Bell was in the kitchen at the time the three entered the apartment. The police placed Bell under arrest for aggravated assault and aggravated battery. Ms. Howard consented to a search of her residence wherein she directed the police officers to the .38 caliber revolver which was located under the mattress in her bedroom. A box of shells was recovered from a shelf in the closet. When police asked the accused his name he first told them it was "Hughes". Once the defendant's real identity was ascertained, a computer check revealed that he had been convicted of the felony of possession of barbituarates with intent to distribute. R.S. 40:968. He was then charged with being a convicted felon in possession of a firearm.
At the trial of this matter, Ms. Howard testified that she and Bell were acquainted romantically but that they had not lived together for a couple of months. She stated that on the night preceding the defendant's arrest that the couple had become involved in an argument over a female friend of the defendant from California, whom the defendant wanted to stay at the victim's house. The three had allegedly stayed at the victim's house on the two prior nights and Ms. Howard then decided she did not want the couple to stay at her house any longer. The altercation took place at about 7:08 p.m. on the night preceding the arrest. According to the victim, the defendant pulled the gun from his back pocket and a struggle ensued as the victim attempted to keep the defendant from loading the gun. The victim stated that she did not call the police on the night of the altercation because she did not get out of the house until the next morning. She also testified that she did not know what Bell did with the gun before the police came because she had left to call the police.
In seeking a reversal of his conviction, the defendant relies upon one assignment of error. The defendant contends that the state failed to prove its case beyond a reasonable doubt. In support of his contention, the defendant argues that the trial judge abused his discretion in finding the prosecution witness credible. He argues further that while a judge may be allowed to determine the credibility of a witness, he should not be allowed, in so doing, to resolve any inconsistency within the testimony so that the prosecution's case, when viewed as a whole, is sufficient to prove the defendant guilty beyond a reasonable doubt. The defendant points to certain apparent inconsistencies in the victim's testimony, in attacking her credibility.[1]
The standard of review in this case is that enunciated in Jackson v. Virginia, namely whether any rational trier of fact, when viewing the evidence in the light most favorable to the prosecution, could have *1165 found that the State proved the essential elements of the crime beyond a reasonable doubt. 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). State v. Edwards, 400 So.2d 1370 (La., 1981).
In discussing the resolution of conflicting inferences in such a review, the U.S. Supreme Court in Jackson, supra 99 S.Ct. at 2793, stated:
Under the standard established in this opinion as necessary to preserve the due process protection recognized in Winship, a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume even if it does not affirmatively appear in the recordthat the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.
While the appellate review standard entails for its application some assessment of the evidence presented at trial, it does not however make this Court a fact finder. See State v. Edwards, supra.
In this case the accused was charged with being a convicted felon in possession of a firearm. R.S. 14:95.1. The essential elements of the crime are set forth in R.S. 14:95.1(A) which provides:
95.1. Possession of firearm or carrying concealed weapon by a person convicted of certain felonies
A. It is unlawful for any person who has been convicted of first or second degree murder, manslaughter, aggravated battery, aggravated or simple rape, aggravated kidnapping, aggravated arson, aggravated or simple burglary, armed or simple robbery, burglary of a pharmacy, burglary of an inhabited dwelling, or any violation of the Uniform Controlled Dangerous Substances Law which is a felony or any crime defined as an attempt to commit one of the above enumerated offenses under the laws of this state, or who has been convicted under the laws of any other state or of the United States or of any foreign government or country of a crime which if committed in this state, would be one of the above enumerated crimes, to possess a firearm or carry a concealed weapon. (Emphasis added)
The purpose of this statute is to limit the possession of firearms by persons who, by their past commission of certain enumerated felonies, have demonstrated a dangerous disregard for the law and present a potential threat of further or future criminal activity. State v. Amos, 343 So.2d 166 (La., 1977). As a result, three elements must be proven in order to convict an accused of this offense:
1.) status of defendant as a convicted felon
2.) possession by the defendant
3.) the instrumentality possessed was a firearm
In State v. Day, 410 So.2d 741 (La., 1982), the Louisiana Supreme Court noted that "actual" possession is not required, nor does the defendant actually have to have the firearm on his person. Thus, "constructive" possession will satisfy this element of the offense. State v. Day, supra.
In this case the parties stipulated that this defendant was convicted of possession of barbituarates and a certified copy of his conviction was entered into evidence. (TR 16) The firearm which was retrieved from the scene of the crime, a .38 caliber revolver, was introduced into evidence without objection. (TR 33)
The balance of the evidence establishes that the State proved the defendant's "possession" of the firearm beyond a reasonable doubt.
Officer Keith Turner testified that a search of the victim's apartment produced a .38 caliber revolver. This evidence was retrieved from under the mattress in the bedroom and a box of shells was taken from a shelf in the bedroom. He made an in-court identification of this tangible evidence. He testified that at the time of the seizure the gun was fully loaded. He stated that the defendant was originally arrested for tossing hot water on the victim and pointing a gun at her.
Officer Norbert Zimmerman testified that on October 20, 1981 he responded to a *1166 disturbance call at 3367 Desire Street. There he met with the victim who advised him that the defendant had thrown hot water on her and had pointed a weapon at her, threatening to kill her. He stated that his patrol partner had gone to the bedroom with the victim where he retrieved a gun and ammunition. This officer identified the weapon and shells as being those seized on the night of this incident. He testified that the defendant identified himself as Leroy "Hughes" when he was questioned as to his identity.
Although Carolyn Howard's testimony, at times, appeared to result in conflicting inferences, we must presume that the trial judge resolved these conflicts in favor of the prosecution. On the crucial issue of the defendant's "possession" of the firearm, Ms. Howard testified unequivocally to the following facts:
Q. Would you tell the Court the reason you called the police?
A. Because he tried to get this young lady that he brought from California to try to stay at my house and he took and throwed hot water on me and shoved a pistol at me and when I could I went and called the police.
Q. Now, you mentioned that he placed a pistol
A. He was talking about shooting me.
A. Okay.
I show you what I have marked for identification as S-1 and ask you if you can identify this?
A. That's he [sic] gun with the bullets.
Q. Where was the gun and bullets when the police came?
A. The bullets was on my shelf and the gun was under the mattress.
Q. Where was the gun when he originally put it on you?
A. It was on him.
* * * * * *
Q. I want you to explain to the Judge the manner in which he placed the gun on you. In other words, I want you to explain what were his actions before you called the police?
A. He came in and turned the TV up loud and was trying to shut me in the room, and I managed to get out and we was fighting with the gun and while we was fighting with the gun I was trying to keep him from loading the gun and
Q. Where were the shells then?
A. In the bag.
Q. Did you see where the gun came from originally?
A. Out of his back pocket. [TR 24-25]
* * * * * *
Therefore, viewing the totality of the evidence in the light most favorable to the prosecution, this Court is satisfied that the State proved the essential elements of R.S. 14:95.1 beyond a reasonable doubt. Accordingly, this assignment of error lacks merit.
For the reasons assigned the defendant's conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] The defendant suggests the following:

1. Ms. Howard stated that the defendant threw hot water on her, pointed a gun at her and that she struggled with him. The police stated that the victim was not wet, had no scald marks and the apartment did not appear ransacked.
2. Ms. Howard first stated that the defendant showed up at her apartment with another girlfriend, an argument ensued and the girlfriend left. She later stated that Bell and the other girl stayed a few days at her apartment and the argument ensued when she asked them to leave.
3. The incident occurred at 7:08 p.m. on October 19, 1981 and the police were called the next morning around 11:00 a.m.
4. The victim stated that she didn't know where the gun was when she left the apartment, but she lead police to the gun upon her re-entry into the apartment.