743 So.2d 895 (1999)
STATE of Louisiana, Appellee,
v.
William Garfield ABRAM, Appellant.
No. 32,627-KA.
Court of Appeal of Louisiana, Second Circuit.
October 27, 1999.
*897 Peggy J. Sullivan, Louisiana Appellate Project, David R. McClatchey, Indigent Defender Office, Counsel for Appellant.
Richard Ieyoub, Attorney General, Paul J. Carmouche, District Attorney, Brian *898 Lee King, Tommy J. Johnson, Asst. Dist. Attys., Counsel for Appellee.
Before GASKINS, KOSTELKA and DREW, JJ.
GASKINS, Judge.
The defendant, William Garfield Abram, was convicted by a jury of possession of a firearm by a convicted felon. He was sentenced to serve 15 years at hard labor without benefit of parole, probation, or suspension of sentence and was ordered to pay a fine of $1,000. He now appeals his conviction and sentence. For the following reasons, we affirm.

FACTS
During the morning of January 16, 1998, between 9 and 11 a.m., the Shreveport Police Department received a call from a complainant who claimed that men driving a 4-door white Oldsmobile 98 had threatened him with a gun.
The vehicle was spotted by patrol officers with the Shreveport police department. Two officers saw a suspect in the back seat of the car throw out an object which was later determined to be a nine millimeter rifle. The vehicle was stopped and it was determined that the defendant, the occupant of the back seat who threw the gun from the car, was a convicted felon, having previously been convicted of simple robbery. The defendant was arrested and charged with being a convicted felon in possession of a firearm. Following a jury trial, the defendant was unanimously found guilty as charged. The defendant was sentenced to serve fifteen years at hard labor without benefit of parole, probation or suspension of sentence, and was ordered to pay a fine of $1,000.
Motions for post verdict judgment of acquittal and for reconsideration of sentence were denied by the trial court. The defendant appealed, arguing that there was insufficient evidence upon which to base his conviction, that the trial court erred in failed to grant his motion for post verdict judgment of acquittal, that the trial court erred in failed to grant a motion in limine regarding his prior conviction and that the sentence imposed was excessive.

SUFFICIENCY OF THE EVIDENCE
The defendant contends that there is insufficient evidence upon which to base his conviction for possession of a firearm by a convicted felon and that the trial court erred in denying his motion for post verdict judgment of acquittal on those grounds.
The constitutional standard of review for the sufficiency of evidence to support a conviction is whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Nealy, 450 So.2d 634 (La. 1984); State v. Morris, 521 So.2d 1214 (La.App. 2d Cir.1988), writ denied, 530 So.2d 80 (La.1988). Jackson is the objective standard for testing the overall evidence, direct and circumstantial, for reasonable doubt. State v. Wright, 445 So.2d 1198 (La.1984); State v. Sutton, 436 So.2d 471 (La.1983); State v. Morris, supra.
The appellate court's responsibility when reviewing sufficiency of evidence does not extend to credibility determinations made by the trier of fact. La. Const. art. 5, § 10(B); State v. Williams, 448 So.2d 753 (La.App. 2d Cir.1984). The critical inquiry is not what a reviewing judge may believe, but instead, whether a rational juror could have found that the evidence proved guilt beyond a reasonable doubt. Jackson, supra. A reviewing court accords great deference to a jury's decision to accept or reject the testimony of a witness in whole or in part. State v. Rogers, 494 So.2d 1251 (La.App. 2d Cir.1986), writ denied, 499 So.2d 83 (La.1987).
*899 In order to convict a defendant of possession of a firearm by a convicted felon, the state is required to prove beyond a reasonable doubt (1) possession of a firearm; (2) conviction of an enumerated felony; (3) absence of the ten-year statutory period of limitation; and (4) general intent to commit the offense. La. R.S. 14:95.1; State v. Husband, 437 So.2d 269 (La.1983); State v. Lewis, 535 So.2d 943 (La.App. 2d Cir.1988), writ denied, 538 So.2d 608 (La.1989), cert. denied, 493 U.S. 963, 110 S.Ct. 403, 107 L.Ed.2d 370 (1989). General intent is shown when the proof shows that the perpetrator carried a firearm on his person. State v. Woods, 94-2650 (La.App. 4th Cir.4/20/95), 654 So.2d 809, writ denied, 95-1252 (La.6/30/95), 657 So.2d 1035. However, when the perpetrator has not carried the firearm on his person, the prosecution must show that the defendant's intent amounted to an intent to possess rather than a mere acquiescence to the fact that there was a firearm in his presence. State v. Woods, supra; State v. Heacox, 543 So.2d 101 (La.App. 3d Cir.1989).
Constructive possession, as opposed to actual possession, is sufficient to satisfy the possession element. State v. Day, 410 So.2d 741 (La.1982); State v. Washington, 605 So.2d 720 (La.App. 2d Cir.1992), writ denied, 610 So.2d 817 (La. 1993). Constructive possession occurs when the firearm is subject to a defendant's dominion and control. A defendant's dominion and control over a weapon constitutes constructive possession even if it is only temporary in nature and even if the control is shared. State v. Washington, supra; State v. Ball, 31,515 (La. App.2d Cir.12/9/98), 733 So.2d 1, writ granted, 99-0428 (La.6/25/98), 745 So.2d 622. Mere presence in an area where the firearm is found, or mere association with an individual found to be in possession of such does not necessarily establish possession. Moreover, constructive possession contains an element of awareness, or knowledge that the firearm is there and general intent to possess it. State v. Ball, supra.
La. R.S. 14:95.1 requires only general criminal intent, which means that the circumstances indicate that the accused "in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act." State v. Washington, 30,108 (La.App.2d Cir.12/10/97), 705 So.2d 254, writ denied, 98-0148 (La.5/8/98), 718 So.2d 430. Although the existence of intent is a question of fact, it need not be proved as such, but may be inferred from the circumstances of a transaction. La. R.S. 15:445. The determination of whether the requisite intent is present in a criminal case is for the trier of fact. State v. Washington, supra.
In this case, it is not disputed that the defendant was previously convicted of simple robbery, an enumerated crime of violence under La. R.S. 14:2(13). The defendant pled guilty to that charge on April 6, 1994, therefore, there is no contention that the predicate offense was committed outside the ten-year time limitation. The only elements to be established are that the defendant was in possession of the firearm and that the defendant had general intent to commit the offense.
The prosecution contended that the defendant had actual possession of the firearm and introduced evidence by way of the testimony of several police officers and the confessions of the defendant to prove that the defendant did indeed have actual possession of the firearm. The evidence also shows that the defendant had constructive possession of the gun.
As stated above, Shreveport police officers responded to a report that three men in a car pointed a gun at a complainant and demanded money. Two officers, J.D. Stalnaker and J.A. Hester, spotted the subject vehicle at the intersection of Bert Kouns and Westport. Officer Stalnaker stated that after he spotted the suspect *900 vehicle, he attempted to pull in closer to get a look at the occupants. However, as he got closer, he saw the rear passenger side door open and saw the passenger in the back seat throw something out of the door into a nearby grassy area. Then, the vehicle headed south on Westport. Officer Stalnaker passed the area where the object landed and saw something long and black in the ditch. He radioed the police station to report the location of the object so that another officer could be dispatched to retrieve it. Officer Stalnaker turned on his lights and sirens and pulled the suspect vehicle over into the Chevron gas station parking lot located at the corner of 70th Street and Industrial.
Officer Stalnaker observed that there were three occupants of the vehicle. The defendant was sitting in the back seat. Officer Stalnaker testified that he never lost visual contact with the vehicle and that he never saw any of the occupants, other than the defendant, located in the back seat. The officer informed the defendant and the other individuals why he stopped them. Soon after, Officer Stalnaker was advised by Officer J.C. Williams, via radio, that the object that he saw the defendant throw out of the vehicle was a gun.
Officer J.C. Williams stated that he went to the area where Officer Stalnaker reported seeing the defendant throw the object out of the car. He searched for and found a silver and black nine millimeter rifle which he retrieved. He then brought the rifle to the Chevron station, where Officer Stalnaker had stopped the defendant and the others.
Officer William Vincent arrived at the Chevron station while the defendant and the others were being questioned. He helped search the vehicle after consent to search was obtained. Officer Vincent found a box of nine millimeter ammunition in the car.
Officer Stalnaker then informed the defendant and the others of their Miranda rights and asked if any of the occupants were convicted felons. The defendant responded affirmatively. The defendant gave the following statement to Officer Stalnaker at the scene:
He said that he had, was just riding around with his buddies and he seen the police car coming down Industrial and he knew the gun, he knew the weapon was in the car and he threw it out the window because he was scared because he knew he wasn't supposed to have a weapon.
Officer J.A. Hester stated that he was located approximately 20-25 feet away from the defendant's vehicle when he saw the defendant throw a long silver item out of the window. He described the person who threw the gun out of the vehicle as the person in the back seat who was making the only real movement in the car and was wearing a blue windbreaker. The defendant was wearing a blue windbreaker when the vehicle was stopped. Officer Hester and Officer Stalnaker then spent a considerable amount of time, approximately 40 minutes, trying to find out who the defendant and his companions were as they continually gave the police officers false names and birth dates in order to avoid being identified as convicted felons.
Officer Hester interviewed the defendant in the back of a police car and the defendant made the following statement:
Okay. He informed me that he had the gun in his hand, that he didn't point it at anyone he was just showing it to them and that he had thrown the weapon out because he was on probation and was scared of the police.
Detective Dennis Ray Pratt stated that he interviewed the defendant the day after he was arrested. Detective Pratt summarized the defendant's statement as follows:
Basically he told me that he was awakened that morning, he was advised that the other gentleman's girlfriend wanted him to take something to the storage bin. They all went to the car. He advised that once he got into the car he saw the gun laying in the car. They *901 started heading down the road. They saw the police. He at that time winds the window down and threw the gun out of the car.
He said he became nervous. He is a convicted felon and he is not supposed to be in possession of a gun, he is not supposed to be around them at any time so he became nervous and he threw the gun out of the car.
Deputy Owen McDonnell, a fingerprint expert, testified at trial and was able to match the fingerprints of the defendant to those found on the bill of information in First Judicial District Court docket number 167,462, State of Louisiana v. William Garfield Abram, filed January 1994, with a conviction date of April 6, 1994 for simple robbery.
The defendant elected to take the stand and testify on his own behalf. On direct examination, the defendant testified that he did not see the gun in the car and that he did not throw anything out of the window. He testified that the only police officer he spoke to was Officer Stalnaker and that he told him that he did not throw the gun out of the car. The defendant further testified that he never spoke to Detective Pratt and that he simply walked into the room where the detective was located and signed the card (presumably the Miranda rights card) and then left the room without saying anything. Finally, the defendant testified about the condition of his right arm. He claimed that he had been shot in the back on a previous occasion and suffered nerve damage in his right arm which made it impossible for him to throw the gun out of the car with his right hand as the officers claimed.
On cross examination, the defendant changed his story somewhat and admitted that he did see the gun in the car. He testified that the driver and front seat passenger were "passing" it back and forth. The next time he saw it, it was flying out of the car but he did not know who threw it out. The defendant at one point stated that one of the occupants of the car named "Chris" owned the gun and "Chris" must have thrown it out. The defendant later testified that "Mike" might have thrown the gun out and then stated that he didn't know if the person to whom he was referring was named "Mike" or "Chris."
In the instant case, the defendant, the only occupant of the back seat of the suspect vehicle, was observed by police officers when he threw the gun from the vehicle. The defendant and his co-conspirators lied about their names and ages for approximately 40 minutes to avoid being found to be convicted felons in possession of a firearm. The defendant admitted to three different police officers that he had the gun in his possession and that he threw it out of the car. The defendant touched the weapon and exercised dominion and control over it when he threw it from the vehicle. It is clear that the jury chose to believe the testimony of the officers rather than the convoluted testimony of the defendant. The evidence establishes all necessary elements to support a conviction for possession of a firearm by a convicted felon. The jury's finding in this regard was not clearly wrong and will not be overturned.

MOTION IN LIMINE
The defendant argues that the trial court erred in denying his motion in limine. The defendant stipulated that he had previously been convicted of simple robbery, one of the enumerated felonies under La. R.S. 14:95.1. Due to the stipulation, the defendant sought, in his motion in limine, to prohibit the prosecution from referring to the nature of his prior conviction. The defendant contended that the probative value of any evidence in regard to his conviction for simple robbery would be outweighed by the risk of prejudice. After a hearing, the trial judge denied the motion, but indicated that he would give a limiting instruction to the jury in order to make sure that there was no undue prejudice to the defendant.
*902 In arguing that the trial court erred in denying his motion, the defendant relies upon the case of Old Chief v. United States, 519 U.S. 172, 117 S.Ct. 644, 136 L.Ed.2d 574 (1997). In that case, the defendant was charged under 18 U.S.C. § 922(g)(1), which prohibits the possession of a firearm by anyone with a prior felony conviction. The United States Supreme Court held that a district court abuses its discretion under Rule 403 of the Federal Rules of Evidence if it spurns a defendant's offer to concede a prior judgment and admits the full judgment record over the defendant's objection, when the name or nature of the prior offense raises the risk of a verdict tainted by improper consideration and when the purpose of the evidence is solely to prove the elements of the prior conviction. In the present case, the defendant contends that La. C.E. art. 403 should be interpreted in the same manner as the federal evidentiary rule, and that his conviction should be reversed because the jury was allowed to hear evidence concerning his conviction for simple robbery.
This court has addressed this issue recently in two separate cases, State v. Morvan, 31,511 (La.App.2d Cir.12/9/98), 725 So.2d 515, writ denied, 99-0186 (La.5/28/99), 743 So.2d 659; and State v. Ball, supra.[1] In both cases, this court found that reference may be made to the prior conviction.
We stated in State v. Ball, supra:
[T]he majority's opinion in Old Chief was premised not on overarching Constitutional principles that are binding on the states, but rather on specific features of 18 U.S.C. § 922(g)(1). By strict construction the majority could find that the federal statute specified only a prior conviction and a sentence over one year, thereby showing legislative intent to avoid mention of the particular crime.
The Louisiana statute, La. R.S. 14:95.1, by contrast defines the crime by specific mention of the prior offense:
It is unlawful for any person who has been convicted of a crime of violence as defined in La. R.S. 14:2(13) which is a felony or simple burglary, burglary of a pharmacy, burglary of an inhabited dwelling, unauthorized entry of an inhabited dwelling, felony illegal use of weapons or dangerous instrumentalities, manufacture or possession of a delayed action incendiary device, manufacture or possession of a bomb, or any violation of the Uniform Controlled Dangerous Substances Law which is a felony, or any crime defined as an attempt to commit one of the above enumerated offenses under the laws of this state, or who has been convicted under the laws of any other state or of the United States or of any foreign government or country of a crime which, if committed in this state, would be one of the above enumerated crimes, to possess a firearm or carry a concealed weapon.
State v. Ball, supra, continues to reason as follows:
Under this statute, the Louisiana Supreme Court has held that evidence of the enumerated prior felony convictions is admissible. State v. Sanders, 357 So.2d 492 (La.1978). Even in light of Old Chief, we are not persuaded to reinterpret it in such a way as would "read out" the reference to the prior conviction. It appears to be required. See State v. Garrison, 400 So.2d 874 (La. 1981); State v. Hawkins, 97-726 (La. App. 3rd Cir.10/29/97), 702 So.2d 1121.
This conclusion is fortified by the fact that in many reported cases arising under La. R.S. 14:95.1, the defendants offer, and the prosecutors agree to accept, *903 a stipulation regarding the prior conviction. See, e.g., State v. Sanders, supra; State v. Williams, 93-0251 (La.App. 4th Cir.1994), 637 So.2d 1230; State v. Williams, 470 So.2d 356 (La.App. 5th Cir.1985); State v. Bell, 439 So.2d 1163 (La.App. 4th Cir.1983). In each of these cases, not only did the parties stipulate to the prior conviction, the prosecution also introduced documentary evidence thereof. In short, we cannot accept Ball's contention that if the stipulation were accepted, the trial would be purged of any and all reference to his prior conviction. The cases appear to allow both.
Also in the present case, as in State v. Ball, supra, and State v. Morvan, supra, the district court gave a limiting instruction:
The defendant is alleged to have possessed a firearm after having been convicted of simple robbery. You are instructed that you may consider evidence regarding the simple robbery conviction only with respect of whether that element of the prior conviction of the enumerated felony has been proven. You may not infer bad character or presume any other negative connotation simply from the fact that the defendant may have a prior criminal conviction.
As stated in State v. Ball, supra, this instruction appears to answer the problems of "unfair prejudice" discussed in Old Chief, supra. Thus, the denial of the motion in limine was not erroneous. This assignment lacks merit.

EXCESSIVE SENTENCE
Following his conviction in this case, the defendant was sentenced to serve fifteen years at hard labor, without benefit of parole, probation, or suspension of sentence. He was also ordered to pay a fine of $1,000. The defendant contends that this sentence is unduly harsh and excessive, under the circumstances. He also argues that the trial court erred in denying his motion to reconsider sentence, based upon this same argument.
The test imposed by the reviewing court in determining the excessiveness of a sentence is two-pronged. First, the record must show that the trial court took cognizance of the criteria set forth in La.C.Cr.P. art. 894.1. The trial judge is not required to list every aggravating or mitigating circumstance so long as the record reflects that he adequately considered the guidelines of the article. State v. Smith, 433 So.2d 688 (La.1983); State v. Dunn, 30,767 (La.App.2d Cir.6/24/98), 715 So.2d 641. The articulation of the factual basis for a sentence is the goal of La. C.Cr.P. art. 894.1, not rigid or mechanical compliance with its provisions. Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has not been full compliance with La.C.Cr.P. art. 894.1. State v. Lanclos, 419 So.2d 475 (La.1982). The important elements which should be considered are the defendant's personal history (age, family ties, marital status, health, employment record), prior criminal record, seriousness of offense and the likelihood of rehabilitation. State v. Jones, 398 So.2d 1049 (La.1981); State v. Bradford, 29,519 (La.App.2d Cir.4/2/97), 691 So.2d 864; State v. Hudgins, 519 So.2d 400 (La.App. 2d Cir.1988), writ denied, 521 So.2d 1143 (La.1988).
Whether the sentence imposed is too severe depends on the circumstances of the case and the background of the defendant. A sentence violates La. Const. art. 1, § 20, if it is grossly out of proportion to the seriousness of the offense or nothing more than a purposeless and needless infliction of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980). A sentence is considered grossly disproportionate if, when the crime and punishment are viewed in light of the harm done to society, it shocks the sense of justice. State v. Hogan, 480 So.2d 288 (La.1985); State v. Bradford, supra.
As a general rule, maximum sentences are reserved for the worst offenders and the worst offenses. State v. Delaughter, 29,974 (La.App.2d *904 Cir.12/10/97), 703 So.2d 1364, writ denied, 98-0018 (La.5/1/98), ___ So.2d ___, 1998 WL 234691.
A trial court had wide discretion to sentence within the statutory limits. Absent a showing of manifest abuse of that discretion, we will not set aside a sentence as excessive. State v. Square, 433 So.2d 104 (La.1983); State v. Washington, 29,478 (La.App.2d Cir.4/2/97), 691 So.2d 345.
The sentencing range contained in La. R.S. 14:95.1 is as follows:
Whoever is found guilty of violating the provisions of this section shall be imprisoned at hard labor for not less than ten nor more than fifteen years without the benefit of probation, parole, or suspension of sentence and be fined not less than one thousand nor more than five thousand dollars.
The trial court determined that even though the defendant was only 23 years of age, he had amassed an extensive criminal record. The court noted that the defendant's criminal record included theft and shoplifting, "peeping tom" (a conviction for which he did not satisfactorily complete his probation), illegal carrying of weapons, simple robbery (a second conviction for which he did not satisfactorily complete his probation), two counts of possession of a controlled dangerous substance, schedule II, which were dismissed by the district attorney, illegal possession of stolen things, and finally possession of a schedule II controlled dangerous substance, which was not dismissed. The defendant also pled guilty to various traffic offenses, including running stop signs, jumping from a vehicle, no driver's license on person, racing and careless operation and hanging out of a vehicle.
In sentencing the defendant, the trial court adequately considered the factors set forth in La.C.Cr. P. art. 894.1 and sufficiently articulated for the record the considerations taken into account in pronouncing sentence. Based upon a review of the defendant's lengthy criminal history, the trial court determined that the defendant was in need of correctional treatment that could best be provided by the Department of Corrections. The trial court felt that any lesser sentence than that actually imposed would deprecate the seriousness of the offense. The trial court also noted that the defendant testified in this case and that the jury apparently did not believe the defendant. Additionally, the trial court stated that "based on the evidence and based on the testimony from Mr. Abram, it's my view that perjury was committed. And certainly one has the right to testify, but one does not have the right to commit perjury. That to me is an aggravating factor."
Based upon the factors set forth above, we also find that the sentence imposed was tailored to both the offender and the offense. Although the defendant was sentenced to serve the maximum period of incarceration under the statute, he received only a minimum fine. The sentence imposed is not an abuse of the trial court's discretion and does not shock our sense of justice. This assignment is without merit.

CONCLUSION
For the reasons stated above, the conviction and sentence of the defendant, William Garfield Abram, are affirmed.
AFFIRMED.
NOTES
[1] As noted above, the Louisiana Supreme Court has granted writs in State v. Ball, supra, to consider this court's treatment of the argument regarding Old Chief v. United States, supra. However, as of the time this opinion was rendered the Louisiana Supreme Court had not issued a definitive ruling on the matter. Therefore, we will continue to follow the rule set forth in State v. Morvan, supra, and State v. Ball, supra.